IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:15-CR-103-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| RODRIGO BUSTAMANTE-MARTINEZ, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's objection to the government's certificate of nonexistence of a public record (DE 33), and defendant's motions to suppress certain evidence. (DE 35, 36). Pursuant to 28 U.S.C. § 636(b)(1), United States Magistrate Judge Robert B. Jones, Jr., issued memorandum and recommendation ("M&R"), wherein it is recommended that the court deny defendant's objection and motions to suppress evidence. (DE 62). Defendant timely filed objection to the M&R (DE 63), and the government did not respond. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court adopts the recommendation of the magistrate judge as its own, and denies defendant's objection and motions to suppress evidence.

## BACKGROUND

On April 8, 2015, defendant was indicted with being an illegal and unlawful alien in possession of firearms in violation of 18 U.S.C. §§ 922(g)(5)(A), 924(a)(2). On December 24, 2015, defendant filed the instant motions, to object to the government's certificate of nonexistence of a public record of defendant's immigration status (DE 33), to suppress evidence of firearms seized during a search of defendant's residence in Nash County, North Carolina, on April 14, 2013 (DE 36), and to suppress custodial statements defendant made on the same date. (DE 35). The government timely filed responses. (DE 38, 39, 42).

The magistrate judge conducted a suppression hearing on March 8, 2016. At the hearing, the government presented testimony of six law enforcement officers ("officers") involved in the incidents leading to defendant's arrest. The government also submitted several exhibits, including a recording of a 911 telephone call, and photographs of firearms discovered and seized by the officers. Defendant did not present any evidence at the suppression hearing.

Briefly, the relevant facts of the underlying incident are as follows. In the early morning hours of April 14, 2013, officers responded to two 911 telephone calls reporting shots being fired near defendant's residence. In response to the first call, officers visited the vicinity of defendant's residence and departed after hearing no shots being fired. In response to the second call, officers knocked on the door of defendant's residence. They noticed bullet shell casings on the front porch from a high-powered rifle and large holes in the ground consistent with a high-powered rifle being fired at close range. When defendant answered the door, officers observed signs that defendant was intoxicated. Officers advised defendant to stop shooting for the night in order not to disturb nearby neighbors, and defendant agreed before returning inside the residence.

Later in the morning, officers received a 911 telephone call from defendant's daughter requesting assistance and reporting a domestic dispute between her parents. She explained that defendant "was striking [defendant's wife] and either pushed her down or pulled her off the bed." (Suppression Hr'g Tr., DE 56, 19:19–20). After an officer arrived outside the residence, defendant's daughter informed the officer that defendant had locked himself in his bedroom after stating, "You may as well shoot me dead," and chambering a round to his rifle. (Id. at 8:12–17). While observing the residence and waiting for additional officers to arrive, the officer noticed defendant standing at the bedroom window with a rifle in one hand. When several more officers arrived, they moved

defendant's wife and two of his children to a safe distance from the residence. Defendant's wife told officers that defendant was in the bedroom, and that no one else was in the residence. One of defendant's family members provided officers with a telephone number for contacting defendant. Officers did not know whether it was a residential telephone number or a cell phone number, and they tried to contact defendant several times without success.

Upon a senior officer's order, officers entered the residence and moved to the bedroom. They found defendant appearing to be asleep on a bed, with a rifle next to him, and they observed three other firearms in the bedroom. Officers handcuffed defendant, walked him outside the residence, and placed him in the front seat of a patrol car. While securing defendant and seizing the firearms, officers discovered two additional children inside the residence. Thereafter, the senior officer ordered a protective sweep of the residence to ensure that all firearms had been located, and that no firearms would be accessible to the children upon their return.

When the protective sweep was completed and officers were preparing to leave, officer George Lewis, Jr. ("Lewis") spoke with defendant. Without advising defendant of his <u>Miranda</u> rights, Lewis asked defendant how many firearms he owned, and defendant admitted that he owned four firearms. Next, Lewis asked defendant a question related to his immigration status, and defendant admitted that he was not a legal citizen. Officers then transported defendant to the magistrate's office with no further conversation.

M&R issued May 20, 2016, wherein it is recommended that the court find moot defendant's objection to the government's certificate of nonexistence of record, and that the court deny defendant's motions to suppress. In particular, the M&R reasons that the government's agreement not to offer into evidence the certificate renders moot defendant's objection to it, and that a number

3

of exigent circumstances and exceptions defeat defendant's arguments that suppression of certain evidence is required by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). On June 3, 2016, defendant filed objections to the M&R, disputing its analysis of officers' warrantless entry into the residence, their search and seizure of firearms, and their questions eliciting statements from defendant prior to reading him his <u>Miranda</u> rights.

## DISCUSSION

A.  Standard of Review

The district court reviews de novo those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." <u>Orpiano v. Johnson</u>, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. <u>Diamond v. Colonial Life & Accident Ins. Co.</u>, 416 F.3d 310, 315 (4th Cir. 2005); <u>Camby v. Davis</u>, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

B.  Analysis

1.  Certificate of Nonexistence of Record

Defendant does not dispute the M&R's analysis of his objection to the government's notice of intent to present a certificate stating that a diligent search of government databases revealed no record indicating that defendant made a legal or lawful entry into the United States. As the M&R

4

notes, in response to defendant's objection, the government has signaled that it no longer intends to offer the certificate at trial, and indicated instead that it plans to call an agent from the Department of Homeland Security to testify as to defendant's immigration status. At the suppression hearing, counsel for the government again confirmed this plan of action.

Having reviewed the M&R's analysis on this point, and finding no clear error, see Diamond, 416 F.3d at 315; Camby, 718 F.2d at 200, the court adopts as its own the M&R's recommendation that the government's notice of intent to introduce the certificate is moot, and that defendant's objection to the certificate therefore is moot as well.

2. Evidence of Firearms

Defendant presents two arguments challenging the conclusion in the M&R that evidence of firearms seized from his residence should not be suppressed. First, defendant disputes the M&R's analysis of officers' entry into the residence. In particular, defendant argues that his family members did not provide implied consent, and that the necessity for emergency aid did not provide an exception to his protections under the Fourth Amendment. Second, defendant disputes the M&R's analysis of officers' seizure of his firearms. In particular, he argues that officers' concern for his children's safety did not require seizure, and that the incriminating nature of the firearms was not immediately apparent for purposes of the plain view doctrine.

a. Officers' Search of Defendant's Residence

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The "most basic principle" of Fourth Amendment jurisprudence is that warrantless searches and seizures "are presumptively unconstitutional." See United States v. Yengel, 711 F.3d 392, 396

5

(4th Cir. 2013). In other words, law enforcement officers generally cannot search and seize a suspect's property without a warrant, even where probable cause to do so exists. Coolidge v. New Hampshire, 403 U.S. 443, 468 (1971). However, "there are 'a few specifically established and well-delineated exceptions' to the search warrant requirement." United States v. Brown, 701 F.3d 120, 126 (4th Cir. 2012) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)). These narrowly defined exceptions are grounded in the concept of "reasonableness," which is the "touchstone of the Fourth Amendment." Kentucky v. King, 563 U.S. 452, 459 (2011).

One well-established exception provides that no warrant is required where "the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." Id. at 460 (internal quotations omitted). For example, "[o]ne exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury." Brigham City v. Stuart, 547 U.S. 398, 403 (2006). "To invoke this so-called 'emergency doctrine,' the person making entry must have had an objectively reasonable belief that an emergency existed that required immediate entry to render assistance or prevent harm to persons or property within." United States v. Moss, 963 F.2d 673, 678 (4th Cir. 1992). "This 'emergency aid exception' does not depend on the officers' subjective intent or the seriousness of any crime they are investigating when the emergency arises." Michigan v. Fisher, 558 U.S. 45, 47 (2009).

In Stuart, officers entered a residence without a warrant after receiving a noise complaint, hearing an ongoing disturbance, and seeing through a window one person strike another person. 547 U.S. at 406. Under those circumstances, the officers had an objectively reasonable basis for believing "both that the injured adult might need help and that the violence in the [residence] was

6

just beginning." Id. The officers were not required to wait until the situation worsened before entering; the United States Supreme Court reasoned, "[t]he role of a peace officer includes preventing violence and restoring order, not simply rendering first aid to casualties." Id.

Similarly, in Fisher, officers entered a residence without a warrant after responding to a noise complaint, noticing signs of a recent disturbance outside, and observing the defendant "screaming and throwing things" inside the residence. 558 U.S. at 48. Based on these circumstances, "[i]t would be objectively reasonable to believe that [the defendant]'s projectiles might have a human target (perhaps a spouse or a child), or that [the defendant] would hurt himself." Id.

Here, officers were responding to a third noise complaint after observing signs that defendant had been drinking alcohol, had discharged a firearm, had engaged in a physical altercation with his spouse, and had expressed a willingness to harm himself or others. These circumstances closely resemble the facts involved in Stuart and Fisher, in that circumstances involving firearms and recent physical violence reasonably alerted officers to the possibility that an occupant inside the residence may suffer harm. See Stuart, 547 U.S. at 406; Fisher, 558 U.S. at 48. Accordingly, the emergency aid exception to the Fourth Amendment's warrant requirement permitted officers to enter defendant's residence.

Defendant argues that the circumstances of his case were distinguishable from the cases described above, because at the time officers decided to enter the residence they had no evidence that anyone inside was injured or required medical assistance. Defendant's argument fails to consider that the risk of "imminent injury" is sufficient to justify warrantless entry in order to provide emergency aid. See Stuart, 547 U.S. at 406; Fisher, 558 U.S. at 48. Although officers were unaware prior to entering that defendant was uninjured, defendant's statement inviting officers to

7

"shoot me dead," coupled with his intoxication and refusal to emerge from his bedroom, supported an objectively reasonable belief that defendant might be injured or at risk of harming himself in the immediate future. Therefore, defendant's arguments on this point are without merit, and officers were justified in entering defendant's residence based upon the emergency aid exception.

Valid consent from an occupant is another well-recognized exception to the warrant requirement for entry into a residence. Trulock v. Freeh, 275 F.3d 391, 401 (4th Cir. 2001). Valid consent "may be inferred from actions as well as words." United States v. Hylton, 349 F.3d 781, 786 (4th Cir. 2003). For example:

> When a tenant is barred from entering her apartment and calls the police for assistance, it can be inferred that she is authorizing them to enter the apartment; when a tenant expresses fear about a dangerous condition in her apartment and calls the police for assistance, it can be inferred that she is authorizing them to diffuse the dangerous condition; and when a tenant calls police for assistance, stating that she is barred from her apartment, expressing fear about the presence of a gun, . . . it can be inferred that she is authorizing the police to enter the apartment and retrieve the gun.

Id. at 786–87. In Hylton, the victim's "words le[d] to the inference that [the victim] gave consent to the police to search her apartment and thereby to enable her to return to the apartment in safety." Id. at 786. Where implied consent is present, the court "need not address the alternative theories . . . to justify the warrantless search, i.e., that the police were entitled to conduct a protective sweep and that their search was justified by exigent circumstances." Id. at 787.

Moreover, "valid consent may be given by any one of the co-habitants of a premises, even though no other co-habitant has consented." Id. at 785. However, if one co-occupant consents to a search while another is physically present and objecting, law enforcement officers do not have reasonable grounds to believe that they can search the premises. Georgia v. Randolph, 547 U.S. 103, 107 (2006). "The [United States] Supreme Court made clear that to defeat a cotenant's consent,

8

the tenant must be both present and objecting," such as by "standing at the door and expressly refusing consent at the time the police solicit entry from the cotenant." United States v. Shrader, 675 F.3d 300, 306–07 (4th Cir. 2012) (internal quotations omitted). For example, if one cotenant consents to a search, then another cotenant must expressly refuse his consent; nonexistence or mere absence of his consent is insufficient to preserve his objection to the search. See United States v. Alvarez-Herrera, No. 13-CR-61-FL, 2013 WL 6531175, at *7 (E.D.N.C. Dec. 12, 2013) ("While defendant argues that he himself never consented, he provides no evidence of refusing permission. Without the defendant clearly expressing his refusal, the officers could not be expected to know that he objected to the search.").

Here, defendant argues that his family members did not provide implied consent; and that he expressly refused consent to officers' entry by standing at the bedroom window while officers were outside, and by not answering their telephone calls. Defendant cites no facts or legal authority to support his first argument regarding implied consent. Based upon a review of the relevant facts, it is clear that his daughter's report of domestic assault involving a firearm, and her request for officers' assistance, closely resemble the implied consent demonstrated in Hylton; victims in both instances called for assistance, described dangerous situations precluding their reentry, and expressed concerns about firearms inside their residences. See 349 F.3d 781, 786.

Defendant's comparison of his situation to the facts in Randolph is unavailing. See 547 U.S. at 103. In Randolph, when an officer confronted the defendant outside his residence and asked for

9

consent to search, the defendant "responded with an unequivocal 'no.'" Randolph v. State, 264 Ga. App. 396, 396 (2003). Here, in contrast, defendant was locked in his bedroom at the far end of the residence, and he exchanged no communication with officers prior to their entry. Therefore, defendant did not expressly refuse consent to officers' entry. See Shrader, 675 F.3d at 306. As a result, defendant's related argument, that his express objection overrode his daughter's implied consent, also must fail. Taken together, the emergency aid exception and defendant's daughter's implied consent each provided sufficient justification for officers' warrantless entry into defendant's residence.

                b.        Officers' Seizure of Defendant's Firearms

Defendant argues that officers' concern for his children's safety did not justify a protective sweep leading to seizure of his firearms, and that the incriminating nature of the firearms was not immediately apparent for purposes of the plain view doctrine.

Protective sweeps provide another exception to the warrant requirement. See United States v. Jones, 667 F.3d 477, 482 (4th Cir. 2012). A protective sweep is "a cursory inspection of those spaces where a person may be found," Maryland v. Buie, 494 U.S. 325, 335–36 (1990), and it "may last no longer than needed to dispel the reasonable suspicion of danger." United States v. Green, 599 F.3d 360, 376 (4th Cir. 2010). "The linchpin of the protective sweep analysis is not the threat posed by the arrestee, but the safety threat posed by the house, or more properly by unseen third parties in the house." Jones, 667 F.3d at 484 (internal quotations omitted). In other words, securing an arrestee does not necessarily remove the risk of danger to officers or to other persons inside a residence. United States v. Moses, 540 F.3d 263, 270 (4th Cir. 2008).

10

For example, in United States v. Laudermilt, 677 F.3d 605 (4th Cir. 2012), officers responded to reports of a threatening domestic situation involving a firearm. Id. at 613. After the officers secured the defendant, they discovered a child inside the residence. Id. at 612. Before leaving the child inside the residence, officers conducted a properly circumscribed protective sweep in order to make sure the residence was safe; and during the search they discovered and seized a firearm. Id. at 612–13. Similarly, in United States v. Battle, No. 5:10-CR-103-H, 2010 WL 4828147 (E.D.N.C. Oct. 27, 2010), officers were justified in performing a protective sweep "to secure the safety of the public when there [was] a suspicion that contraband or firearms [were] present. . . . [and] four children reside[d] in the house." Id. at *6.

Defendant argues that after officers secured him without incident, "all safety concerns evaporated," and officers "should have left [the firearms] with the Defendant's wife as the senior responsible adult in the home." (DE 63, 7). Defendant attempts to distinguish his circumstances from those in Battle on the basis that the officers in that case had an arrest warrant. However, the absence of an arrest warrant does not erase an independent basis for officers' concern for the safety of defendant's children, particularly where officers had observed a minimum of four firearms within plain view, and were aware that at least three children would be returning to the residence after they secured defendant. (See Suppression Hr'g Tr., DE 56, 54:17–24, 55:1–3, 59:6– 9); cf. Battle, 2010 WL 4828147, at *6. Defendant provides no case law to support his argument that the firearms should have been left in the care of his spouse, and factually analogous cases support officers' seizure of firearms in similar circumstances. See Battle, 2010 WL 4828147, at *6; Laudermilt, 677 F.3d at 608–09. Accordingly, defendant's argument that officers were not justified in seizing his firearms as part of their protective sweep must fail.

11

Defendant's other argument challenges the M&R's application of the plain view doctrine. "[L]aw enforcement officers may seize evidence in plain view, provided that they have not violated the Fourth Amendment in arriving at the spot from which the observation of the evidence is made." King, 563 U.S. at 462–63 (citing Horton v. California, 496 U.S. 128, 136–40 (1990)). Under this "plain view" exception to the warrant requirement,

> a law enforcement officer may seize evidence in "plain view" without a warrant where (1) the officer is lawfully located in a place from which the item can plainly be seen; (2) the officer has a lawful right of access to the item itself; and (3) the incriminating nature of the seized item is immediately apparent.

United States v. Davis, 690 F.3d 226, 263 (4th Cir. 2012).[1]

The requirement that an object's contraband status be "immediately apparent" requires officers to have "probable cause to believe that an object in plain view is contraband without conducting some further search of the object." Minnestoa v. Dickerson, 508 U.S. 366, 375 (1993). Probable cause is "a fluid concept[ ] that takes [its] substantive content from the particular contexts in which the standard[ ] [is] being assessed." Ornelas v. United States, 517 U.S. 690, 696 (1996). It exists when "facts available to the officer would warrant a man of reasonable caution in the belief that certain items may be contraband or stolen property or useful as evidence of a crime." Texas v. Brown, 460 U.S. 730, 742 (1983) (internal quotations omitted). "A practical, nontechnical probability that incriminating evidence is involved is all that is required." Id.

Defendant argues that the M&R erred where it concluded that the incriminating nature of the firearms was not immediately apparent. Defendant provides no legal authority to support this

---

[1] Defendant argues that the M&R errs in concluding that officers satisfied the first element. However, for the reasons explained above, officers had both exigent circumstances and implied consent from defendant's daughter to enter the residence and proceed to the bedroom in which they viewed and seized the firearms. Accordingly, defendant's argument on this point is without merit.

12

contention; he argues that his daughter's report of the domestic assault described him only as pushing or pulling his spouse. However, defendant's description of his daughter's report overlooks the portion in which she explains to officers that at the conclusion of the domestic dispute, defendant "chambered a round into his rifle and locked the [bedroom] door." (Suppression Hr'g Tr., DE 56, 8:4–5). In the context of officers' investigation of domestic assault involving a firearm, there was a reasonable belief that firearms laying in plain view in defendant's bedroom, where the assault occurred, might be useful as evidence of a crime. See Brown, 460 U.S. at 742; Ornelas, 517 U.S. at 696. Accordingly, defendant's argument on this point fails.

3.  Evidence of Custodial Statements

Lastly, defendant argues the M&R errs in concluding that the public safety exception to the Fifth Amendment and Miranda apply to his statements given while in custody and before he received Miranda warnings. In particular, defendant objects to the M&R's treatment of his response to Lewis's question about the number of firearms he owned.[2]

"The public safety exception to the Miranda requirement allows pre-Miranda questioning at the scene regarding matters relevant to the safety of the police or members of the public, even when a defendant is in custody for purposes of Miranda." United States v. Gardner, No. 4:11-CR-65-F-1, 2013 WL 6859280, at *2 (E.D.N.C. Dec. 30, 2013) (citing New York v. Quarles, 467 U.S. 649, 655–56 (1984)). In applying the public safety exception, circumstances are "not to be analyzed in

---

[2] Defendant does not dispute the M&R's analysis of his objection to Lewis's question regarding defendant's immigration status. As the M&R notes, in response to defendant's objection, the government conceded that the public safety exception does not apply to defendant's statements about his immigration status, and the government indicated that it will not introduce that statement at trial. Having reviewed the M&R's analysis on this point, and finding no clear error, see Diamond, 416 F.3d at 315; Camby, 718 F.2d at 200, the court adopts as its own the M&R's recommendation that defendant's motion to suppress be denied as moot with regard to his statement about his immigration status.

13

light of the subjective motive of the questioner but rather from the objective perspective of the presence of a public danger." United States v. Mobley, 40 F.3d 688, 692 (4th Cir. 1994).

For example, in Gardner, officers' knowledge that the defendant possessed a firearm, coupled with their observation of defendant reaching for something or putting something under his car seat, provided an objectively reasonable concern of immediate danger regarding the presence of firearms. Id. Officers' concern for public safety in the presence of firearms may be particularly justified when children are involved. See, e.g., Laudermilt, 677 F.3d at 612–13 ("Once the officers permitted [the child] to stay in the house, . . . . the officers' decision to inquire about the location of the firearm in order to make sure the home was safe was not unreasonable."); Battle, 2010 WL 4828147, at *6 (applying the public safety exception to allow into evidence a defendant's pre-Miranda statement regarding the presence of a firearm in a residence containing four children).

Based upon a review of the circumstances here, officers had an objective basis to ask the question in order to ensure that all firearms had been recovered before defendant's children were allowed to return to the residence. (Suppression Hr'g Tr., DE 56, 78:18–23). Defendant's argument that Lewis asked a question about defendant's ownership of firearms with intent to link the firearms to defendant pertains only to Lewis's subjective intent. See id. It does not refute the objective evidence of the presence of public danger, which reasonably was based upon officers' discovery of several firearms and their knowledge that children would be returning to the residence. See id. Therefore, defendant's argument on this point fails.

## CONCLUSION

Based upon the foregoing, upon de novo review of the portions of the M&R to which specific objections were raised, and upon considered review of the remainder thereof, the court

14

ADOPTS the recommendation of the magistrate judge as its own. (DE 62). Defendant's objection to the government's certificate of nonexistence of record is DENIED as MOOT (DE 33); defendant's motion to suppress evidence of firearms is DENIED (DE 36); and defendant's motion to suppress evidence of custodial statements is DENIED as MOOT with respect to his statement concerning immigration status, and DENIED with respect to his statement concerning firearms. (DE 35).

SO ORDERED, this the 15th day of July, 2016.

                                                LOUISE W. FLANAGAN
                                                United States District Judge